1  Christopher J. Cox (Bar No. 151650)
   chris.cox@weil.com
2  WEIL, GOTSHAL & MANGES, LLP
   201 Redwood Shores Parkway
3  Redwood Shores, CA 94065
   Telephone: (650) 802-3000
4  Facsimile: (650) 802-3100

5  OF COUNSEL:

6  Yvette Ostolaza
   Michelle Hartmann
7  Casey A. Burton
   WEIL, GOTSHAL & MANGES, LLP
8  200 Crescent Court, Suite 300
   Dallas, TX 75206
9  Telephone: (214) 746-7700
   Facsimile: (214) 746-7777

10

11 Attorneys for Defendant
   CEC ENTERTAINMENT, INC.

12

          UNITED STATES DISTRICT COURT
13
       SOUTHERN DISTRICT OF CALIFORNIA
14

15

16 DENISE KELLER, an individual, on behalf of       Case No. 11-cv-00629 WQH-POR
   herself and all others similarly situated,
17                                                   *The Hon. William Q. Hayes*
                          Plaintiff,
18                                                   **CEC ENTERTAINMENT, INC.'S
          v.                                         MEMORANDUM OF POINTS AND
19                                                   AUTHORITIES IN SUPPORT OF CEC
   CEC ENTERTAINMENT, INC., a Kansas                 ENTERTAINMENT, INC.'S MOTION TO
   corporation, and DOES 1-10,                       DISMISS COMPLAINT**
20
                          Defendants.                CLASS ACTION
21
                                                     JURY TRIAL DEMANDED
22
                                                     Hearing Date:  June 13, 2011, 11:00 a.m.,
23                                                   Courtroom 4

24                                                   NO ORAL ARGUMENT UNLESS
                                                     REQUESTED BY THE COURT
25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3    I.      PRELIMINARY STATEMENT ...................................................................... 1

4    II.     FACTUAL BACKGROUND ........................................................................ 2

5            A.      The Parties ........................................................................................ 2

6            B.      Plaintiff's Complaint ......................................................................... 3

             C.      The Purported Class .......................................................................... 4

7    III.    ARGUMENTS AND AUTHORITIES ........................................................ 4

8            A.      The Penal Code on Which Plaintiff Bases All of Her Claims Was Not
                     Intended to Reach the Kiddie Arcade Games At Issue ......................... 4

9
             B.      Plaintiff's Reading Of California Penal Code Section 330a and 330b
10                   Would Render The Statute Unconstitutionally Overbroad and Vague ................. 5

11           C.      Plaintiff Is Barred From Pursuing All Of Her Claims for Relief ......................... 8

12           D.      Plaintiff's Declaratory Judgment Claim Must Be Dismissed As
                     Duplicative .................................................................................... 11

13           E.      Plaintiff Cannot Maintain a Class Action Under Rule 23(b)(2) and the
                     Relief Requested Should Be Stricken ................................................. 12
14
             F.      Plaintiff's Claim for Attorneys' Fees Should Be Dismissed or the Relief
15                   Stricken ........................................................................................ 15

16   IV.     CONCLUSION AND REQUESTED RELIEF ........................................... 16

17           TABLE OF EXHIBITS ....................................................................... 17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Allison v. Citgo Petroleum Corp.,
  151 F.3d 402 (5th Cir. 1998) .................................................................... 12

Alves v. Players Edge, Inc.,
  No. 05-CV-1654, 2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) ................................... 8, 10, 11

Am. Online, Inc. v. Superior Court,
  90 Cal. App. 4th 1 (2001) .................................................................... 15

Amchem Prods., Inc. v. Windsor,
  521 U.S 591 (1997) .......................................................................... 12

Arabian v. Sony Elecs., Inc.,
  No. 05-CV-1741, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ................................... 14

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ....................................................................... 2

Asher v. Johnson,
  79 P.2d 457 (Cal. Ct. App. 1938) .......................................................... 8, 9, 10

Bradley v. Doherty,
  30 Cal. App. 3d 991 (1973) .................................................................. 11

Butler v. Sterling, Inc.,
  210 F.3d 371 (6th Cir. 2000) ................................................................ 13

Campion v. Old Republic Home Protection Co., Inc.,
  --- F.R.D. ---, 2011 WL 42759 (S.D. Cal. Jan. 6, 2011) ...................................... 14

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
  20 Cal. 4th 163 (1999) ...................................................................... 15

Concorde Equity II, LLC v. Miller,
  732 F. Supp. 2d 990 (N. D. Cal. 2010) ...................................................... 12

Dissmeyer v. State,
  249 P.3d 444 (Kan. 2011) ..................................................................... 7

Dukes v. Wal-Mart Stores, Inc.,
  603 F.3d 571 (9th Cir.), cert. granted in part, 131 S. Ct. 795 (2010)....................... 13

Funliner of Alabama, L.L.C. v. Pickard,
  873 So. 2d 198 (Ala. 2003) .................................................................. 14

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

ii

Case No. 11-CV-0629 WQH-POR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

People ex rel. Gallo v. Acuna,
  14 Cal. 4th 1090 (1997) ................................................................. 7, 8

Gatto v. Cnty. of Sonoma,
  98 Cal. App. 4th 744 (2002) ............................................................. 6

Guerra v. Sutton,
  783 F.2d 1371 (9th Cir. 1986) ........................................................ 11

Hovespian v. Apple, Inc.,
  No. 08-5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)................. 14

Jamgotchian v. Scientific Games Corp.,
  371 F. App'x 812 (9th Cir. 2010) ...................................................... 8

Kelly v. First Astri Corp.,
  72 Cal. App. 4th 462 (1999) .................................................. 8, 10, 11

Lawson v. Kolender,
  658 F.2d 1362 (9th Cir. 1981), aff'd 461 U.S. 352 (1983)............... 7, 8

Mangindin v. Washington Mut. Bank,
  637 F. Supp. 2d 700 (N.D. Cal. 2009) ............................................. 11

Mass. Mut. Life Ins. Co. v. Superior Court,
  97 Cal. App. 4th 1282 (2002) .......................................................... 15

Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.,
  No. 10-0443, 2010 WL 2077143 (N.D. Cal. May 21, 2010)................. 15

Notrica v. State Comp. Ins. Fund,
  70 Cal. App. 4th 911 (1999) ............................................................ 15

People v. Rosen,
  78 P.2d 727 (Cal. 1938) ................................................................... 9

Ricon v. Recontrust Co.,
  No. 09-CV-937, 2009 WL 2407396 (S.D. Cal. Aug. 4, 2009) ....... 11, 12

Thornhill v. Alabama,
  310 U.S. 88 (1940)........................................................................... 6

U.S. v. Lanier,
  520 U.S. 259 (1997).................................................................... 7, 8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Wallace v. Opinham,
   73 Cal. App. 2d 25 (1946)............................................................... 9, 10, 11

Waters v. Advent Prod. Dev., Inc.,
   No. 07-CV-2089, 2011 WL 721661 (S.D. Cal. Feb. 22, 2011) ............................ 14

Woo v. Home Loan Group, L.P.,
   No. 07-CV-0202, 2007 WL 6624925 (S.D. Cal. July 27, 2007) ........................... 15

Woodland Hills Residents Ass'n, Inc. v. City Council,
   23 Cal. 3d 917 (1979) ................................................................. 15

### STATUTES/RULES

CAL. CONST., art. I, §§ 7, 15 .............................................................. 6, 7

CAL. CODE OF CIV. P. 1021.5 ............................................................... 15

CAL. PENAL CODE § 330 ..................................................................... 9

CAL. PENAL CODE § 330a ................................................................ passim

CAL. PENAL CODE § 330b ................................................................ passim

CAL. PENAL CODE § 335 ..................................................................... 6

FED. R. CIV. P. 12(b)(6) ..................................................................... 2

FED. R. CIV. P. 12(f) ..................................................................... 2, 14

FED. R. CIV. P. 23 .................................................................... passim

U.S. CONST., Amend. V & XIV § 1 ......................................................... 6, 7

### OTHER

Cal. Bill Analysis, Cal. Senate Comm. on Public Safety, A.B. 1753 Sen. (June 22, 2010) ....... 4, 5

## I. **PRELIMINARY STATEMENT**

Following what she describes as "numerous" visits to her local Chuck E. Cheese restaurant in which she and her children played arcade games and acquired prizes and tickets, Plaintiff purportedly came to the sudden realization that the family-friendly restaurant was operating an illegal gambling ring. She now seeks to recover in excess of five million dollars in claimed money damages from Chuck E. Cheese. Plaintiff's claims should be dismissed for at least the following five reasons:

First, the games identified in the Complaint are not illegal as a matter of law. The California legislature never intended to criminalize the operation of arcade games for children, for which prizes of nominal value can be awarded, and the games Plaintiff claims are illegal "slots" are not the type of video slots on which recent amendments are based. Rather, as is evident from recent amendments to the statute, the California legislature is concerned about video slot machines masquerading as video games, with hidden "switches" used by business owners to transform legal video games into illegal video slot machines. Plaintiff's claims thus should be dismissed as a matter of law. In the alternative, if the Court finds that the statute reaches and criminalizes the children's games at issue, the statute should be invalidated because, as applied to the games identified in the Complaint, it is overbroad and vague under the United States and California Constitutions.

Second, even assuming that the games operated by Chuck E. Cheese constitute illegal gambling devices (which they do not), Plaintiff would then be an admitted participant in the illegal gambling. California courts have barred participants in such circumstances from seeking *any* recovery due to a plaintiff's lack of standing or under the doctrine of *in pari delicto*. It is apparent from the face of the Complaint that Plaintiff seeks to recover funds premised on Chuck E. Cheese's operation of illegal gambling devices while simultaneously urging the Court to disregard any repercussions associated with her admitted participation in playing those same devices. Based on her own concession of participation—on "numerous" occasions—in what she describes as illegal gambling, under California law, Plaintiff has no standing to sue, and her Complaint should be dismissed as a matter of law.

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1

Case No. 11-CV-0629 WQH-POR

Third, Plaintiff's claim for a declaration that the games identified in the Complaint are illegal is entirely duplicative of Plaintiff's other claims and, therefore, should be dismissed.

Fourth, because the relief sought in the Complaint is predominantly monetary, Plaintiff cannot proceed under Rule 23(b)(2) of the Federal Rules.  Plaintiff asserts claims in excess of five million dollars.  In no event can such a significant sum qualify as ancillary to the injunctive relief cited in her Complaint.  Thus, her Rule 23(b)(2) class claims should be dismissed, or, in the alternative, stricken.

Finally, Plaintiff's request for attorneys' fees in connection with her Section 17200 claim must be denied or, in the alternative, stricken because she is not seeking to validate a fundamental constitutional right or statutory policy, as is required for a grant of such relief.

## II.   FACTUAL BACKGROUND[1]

### A.   The Parties.

Chuck E. Cheese operates family restaurants that feature games, rides, prizes, food, and entertainment for children.  (Compl. ¶ 1.)  Included in a typical Chuck E. Cheese restaurant is an "arcade-style game room[]," which "contain[s] a variety of games and rides." (Id. ¶ 8.)

According to the Complaint, Plaintiff is a mother of two girls, ages three and five. (Id. ¶ 3.)  She claims to have frequented the Grossmont Center Chuck E Cheese restaurant "on numerous occasions" with her children, where "she and her children have paid for tokens" and played what she now claims are "illegal games."  (Id. ¶ 13.)

---

[1]   For purposes of this Motion and Rule 12(b)(6), the well-pleaded factual allegations of the Complaint must be taken as true.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  Mere conclusory assertions, however, are insufficient and need not be credited.  Id.  Pursuant to Rule 12(f), the Court should strike any "matter" in the Complaint that is immaterial or impertinent. See FED. R. CIV. P. 12(f) ("[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

2

Case No. 11-CV-0629 WQH-POR

**B.    Plaintiff's Complaint.**

Plaintiff describes the games at Chuck E. Cheese restaurants as being operated by first inserting a token available only for use at Chuck E. Cheese restaurants.  (Id. ¶ 8.)  Plaintiff asserts that "[a]t the conclusion of the game, most of the machines dispense a handful of tickets that can be redeemed for various prizes at a prize center.  (Id.)  Plaintiff concedes that the prizes are trivial—such as "a plastic ring or a piece of candy,"(id.) and admits that most of the games at Chuck E. Cheese restaurants are games based on skill, which she asserts makes them legal.  (Id. ¶ 10.)  Plaintiff nonetheless claims that other games available for play at Chuck E. Cheese are predominantly based upon chance and, as alleged, constitute illegal slot machines.  (Id.)

Without providing any factual background or support, Plaintiff asserts that she only "recently realized that some of the games her children were playing involved little or no skill," (id. ¶ 13), and now believes certain machines at Chuck E. Cheese that she played are illegal gambling devices.  (Id.)  Finally, although she offers no detail regarding the prizes acquired in return for the games played, Plaintiff asserts that the prizes acquired and the tickets received were worth "far less than the value of the tokens inserted into the machines."  (Id.)

Plaintiff brings four claims for relief:

(i) Alleged violations of Section 17200, in which she seeks an "order and/or judgment from the Court to enjoin Defendant from engaging in practices which constitute unfair competition" and "which may be necessary" to restore to her (and members of a purported class) "all monies wrongfully acquired by defendant by means of such practices, plus interest and attorneys' fees," (id. ¶¶ 24-30);

(ii) Rescission of an alleged contract between Plaintiff and Chuck E. Cheese, and "restitution of all sums paid thereon," (id. ¶¶ 31-34);

(iii) Breach of an implied contract, in which Plaintiff alleges that Chuck E. Cheese "charged and unjustifiably retained excessive sums of money from Plaintiff through wrongfully charging Plaintiff for the opportunity to play gambling devices and by promoting gambling to children in order to earn a profit," and further claims that Chuck E. Cheese was

"unjustly enriched at Plaintiff's expense" and at the expense of the purported class, (<u>id.</u> ¶¶ 35-38); and

(iv) Declaratory judgment, in which Plaintiff claims that the games identified in the Complaint are "slot machines and illegal," (<u>id.</u> ¶¶ 39-41).

On behalf of herself and a purported class, Plaintiff claims entitlement to damages, restitution, or disgorgement in an amount greater than $5 million.  (<u>Id.</u> ¶ 1.)

**C.      The Purported Class.**

Pursuant to Rules 23(b)(2) and/or (b)(3), Plaintiff seeks to certify the following class:

> For the period of March 29, 2007 through the date of the trial, all California citizens who purchased tokens and played illegal gaming devices at a Chuck E. Cheese's restaurant located in California including, but not limited to:
>
> a)   Thuderation (sic)
> b)   Wheel of Fortune
> c)   Big Bass Wheel
> d)   Slap Happy
> e)   Hat Trick
> f)   Chuck E.'s Rubble Bubble
> g)   Rollin' on 24's
> h)   Ticket Troopers
> i)   Jackpot Extreme
> j)   Wonder Wheel
> k)   Deal or No Deal

(<u>Id.</u> ¶¶ 15-16.)

## III.      ARGUMENTS AND AUTHORITIES

**A.      The Penal Code on Which Plaintiff Bases All of Her Claims Was Not Intended to Reach the Kiddie Arcade Games At Issue.**

The laws prohibiting the ownership of illegal gambling devices and on which Plaintiff bases her claim that the games are illegal "slot" machines bear harsh criminal penalties, including jail time.  <u>See</u> CAL. PENAL CODE §§ 330a, 330b, & 330.1.  Indeed, the statute was recently amended insofar as "slot machines" are concerned to impose stiffer criminal penalties. <u>See</u> Cal. Bill Analysis, Cal. Senate Comm. on Public Safety, A.B. 1753 Sen. (June 22, 2010), a

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

4

Case No. 11-CV-0629 WQH-POR

copy of which is attached as Exhibit "A."  The aim of those stiffer penalties and the identity of the specific "slot" machines at issue is clear:  business owners targeting low-income communities through video slot machines camouflaged as "video games."  <u>Id.</u> at 1.

As pleaded by Plaintiff, Chuck E. Cheese is the model of transparency insofar as both its arcade games and its focus on family are concerned.  (<u>See</u> Compl. ¶ 4 (stating CEC is "a publicly-traded corporation" that "is the owner and operator of 507 Chuck E. Cheese restaurants in forty-eight states").)  Plaintiff does not allege that any of the Chuck E. Cheese games are, in actuality, video slot machines that are hidden or "camouflaged" from the authorities or that Chuck E. Cheese uses its kiddie arcades to target lower income communities with the prospect of large monetary payouts upon a successful play.  (<u>See generally</u> Compl.)  To the contrary, Plaintiff alleges that she, along with thousands of other persons, frequented the family-friendly restaurant on "numerous" occasions with the prospect of acquiring only trivial prizes of low monetary value.  (<u>Id.</u> ¶ 13.)  As such, Plaintiff's use of the word "slot" as a pejorative description of Chuck E. Cheese's kiddie arcade games does not bring them under the umbrella of a statute intended to penalize businesses operating video slot machines camouflaged as video games.  <u>See</u> Cal. Bill Analysis, Cal. Senate Comm. on Public Safety, A.B. 1753 Sen. (June 22, 2010) ("The machines are placed in liquor stores, donut shops, restaurants, video stores, and tobacco shops. The video slot machines are generally placed in businesses located in lower income communities … Sometimes, the video slot machines are camouflaged as video arcade games.  This allows the illegal machine to be placed in public view without being easily detected.  *The business owner can switch the machine from an arcade game to a video slot machine by remote control*.") (emphasis added).)  The claims, therefore, should be dismissed as a matter of law.

**B.**   **Plaintiff's Reading Of California Penal Code Section 330a and 330b Would Render The Statute Unconstitutionally Overbroad and Vague.**

Alternatively, Plaintiff's interpretation of the definition of "slot machine" in California Penal Code Sections 330a and 330b as applying to the kiddie games played by children at Chuck E. Cheese restaurants renders the statute overbroad and unduly vague under the United States and California Constitutions.

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

5

Case No. 11-CV-0629 WQH-POR

A statute or regulation is overbroad if "does not aim specifically at evils within the allowable area of [governmental] control, but . . . sweeps within its ambit other activities in ordinary circumstances that constitute an exercise" of protected expression and conduct, such as the right to own and hold property at issue in this case.  Gatto v. Cnty. of Sonoma, 98 Cal. App. 4th 744, 776 (2002) (quoting Thornhill v. Alabama, 310 U.S. 88, 97 (1940)).  Further, in order for a statute to be overbroad, it must impinge upon some constitutionally protected right.  See id. Here, the constitutional right that is being impinged is the right—under both the United States Constitution and California Constitution—not to be deprived of property without due process of the law.  U.S. CONST., Amend. V & XIV § 1; CAL. CONST., art. I, §§ 7, 15.

Plaintiff cites California Penal Code Sections 330a and 330b for the proposition that Chuck E. Cheese has been operating illegal slot machines.  (Compl. ¶¶ 10, 28, 33.)  The relevant portion of Section 330a defines "slot machines" as any machine where "any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance."  CAL. PENAL CODE § 330a(a).  Similarly, Section 330b defines "slot machines" as

> A machine, apparatus, or device that is adapted, *or may readily be converted*, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and *by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her*, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of operation, also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value.

Id. § 330b(d) (emphasis added).  The Penal Code permits seizure of such machines.  CAL. PENAL CODE § 335a (any "machine or other device the possession or control of which is penalized by the laws of this State prohibiting lotteries or gambling may be seized by any peace officer").

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

6

Case No. 11-CV-0629 WQH-POR

Under Plaintiff's expansive interpretation of the California Penal Code's definition of "slot machine" as applying to any game where *any* element of chance plays a role in the outcome of the game or that could be converted to an illegal gambling device, certain of Chuck E. Cheese's property would be subject to seizure, as would similar mechanical devices that are designed purely for children's amusement—including, by way of example, a personal computer that could be operated as a gambling device by accessing Internet gambling sites or a gumball machine that randomly dispenses capsules containing assorted prizes like toys and rings, the result of which not being within the child's control and thus subject to hazard or chance.  See Dissmeyer v. State, 249 P.3d 444 (Kan. 2011) (invalidating as unconstitutionally overbroad a similar gaming statute because, under the statute, even "Chutes and Ladders and Twister children's games use spinners, which are mechanical devices," could be used for gambling).  As in Dissmeyer, the Penal Code section at issue, as applied through Plaintiff's strained interpretation, would subject Chuck E. Cheese to a denial of its right to own property without due process of law, which right is protected by both the United States and California Constitutions.  See Dissmeyer, 249 P.3d at *5-6; see also U.S. CONST., Amend. V & XIV § 1; CAL. CONST., art. I, §§ 7, 15.  Accordingly, it is unconstitutionally overbroad.

Similarly, Plaintiff's interpretation of the definition of "slot machine" as applied to the kiddie games at Chuck E. Cheese renders the statute unconstitutionally vague.  The Due Process clause of the Fifth Amendment, which is made applicable to the states through the Fourteenth Amendment, prohibits punishment pursuant to a statute so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application." U.S. v. Lanier, 520 U.S. 259, 266 (1997); People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1115 (1997).  The central concern in a vagueness analysis is the due process requirement of adequate *notice*.  Acuna, 14 Cal. 4th 1090 at 1115; see also Lawson v. Kolender, 658 F.2d 1362, 1370 (9th Cir. 1981), aff'd 461 U.S. 352 (1983).  To determine if a person has adequate notice, courts will look to the context surrounding the law.  See, e.g., Acuna, 14 Cal. 4th at 1115.

Here, because Chuck E. Cheese would have to speculate as to the application of the law to its games of amusement, and, indeed, would have no reason to assume that its kiddie arcade games would constitute illegal gambling.  Plaintiff's interpretation of the definition of "slot machine," if applied, would render the statute unconstitutionally vague under both the United States and California Constitutions.  See Acuna, 14 Cal. 4th at 1115 ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.  All are entitled to be informed as to what the State commands or forbids."); see also Lanier, 520 U.S. at 266; Lawson 658 F.2d at 1370.

**C.      Plaintiff Is Barred From Pursuing All Of Her Claims for Relief.**

The games identified by Plaintiff in the Complaint are *not* illegal.  But even if they were, Plaintiff's own allegations doom her claims under California law due to her lack of standing and because of the doctrine of *in pari delicto*.

This Court has recognized that "'California has a strong, broad, and long-standing public policy against judicial resolution of civil disputes arising out of gambling contracts or transactions.'"  Alves v. Players Edge, Inc., No. 05-CV-1654, 2007 WL 6004919, at *14 (S.D. Cal. Aug. 8, 2007) (Hayes, J.) (quoting Kelly v. First Astri Corp., 72 Cal. App. 4th 462, 477 (1999)); see also Jamgotchian v. Scientific Games Corp., 371 F. App'x 812, 812-13 (9th Cir. 2010) (upholding dismissal of case on grounds of longstanding public policy against judicial resolution of gambling disputes); accord Asher v. Johnson, 79 P.2d 457, 460 (Cal. Ct. App. 1938) ("*No principle of law is better settled* than that a party to an illegal contract cannot come into a court of law and set up a case in which he must necessarily disclose an illegal contract as the groundwork of his claim.") (emphasis added and quotation omitted).  In that regard and as pronounced in Asher, California courts refuse to render aid to a plaintiff, such as Plaintiff, who is a participant in an allegedly illegal act:

> The rule is well established without conflict of authorities that when a plaintiff, who is the culpable party, is compelled to disclose the fact that the transaction upon which he relies for recovery is an illegal violation of criminal law, *the courts will invariably refuse to determine the controversy*, and will leave the offender against the law exactly where he finds himself at the outset of the litigation.

Asher, 79 P.2d at 463 (emphasis added).

Consistent with this rule, unless Plaintiff can establish liability against Chuck E. Cheese *without* relying on her claimed illegal gambling transaction, she has no standing to sue and the Court should refuse to hear the matter.  Cf. id. ("Therefore, the test is declared to be whether the contract sought to be enforced can be separated from the illegal acts or contracts relied upon as avoiding it, and whether the plaintiff requires any aid from, *or must in any way rely upon the illegal transaction in order to establish his case*.") (emphasis added); accord Wallace v. Opinham, 73 Cal. App. 2d 25, 28-29 (1946) ("The California cases are uniform in holding that where money or property is lost in a transaction between the parties which is prohibited by law, neither of the parties has standing in a court of law or equity to recover his losses."); see also People v. Rosen, 78 P.2d 727, 728 (Cal. 1938) (holding that participants in illegal games of chance "have no standing in a court of law or equity").  This she cannot do.

According to the allegations in the Complaint, there can be no doubt that: (i) Plaintiff participated in the alleged illegal transaction, and (ii) she must rely on her participation in order to recover from this Court.  Plaintiff admits in her Complaint that she and her children played the arcade games at Chuck E. Cheese "for an opportunity to win tickets in order to redeem the tickets for prizes," and that she and her children did, in fact, receive prizes for and the benefits of playing the games.  (See Compl. ¶ 13.)  She does not claim that Chuck E. Cheese made her participate in arcade games; that she played the games under protest; or that she was otherwise coerced to play the games.  (See generally Compl.)  Rather, she concedes frequenting Chuck E. Cheese to play the games "on numerous occasions," (Compl. ¶ 13.), and is thus, in essence, admitting that she should be subject to criminal penalty as a participant in games claimed to be illegal under California law.  Compare CAL. PENAL CODE § 330 (making it a misdemeanor to "play … any game of …*roulette* … or any banking or percentage game played with … any device for money, checks, credit, or other representative of value") (emphasis added) with Compl. ¶ 1 (noting that many of the games at Chuck E. Cheese "require little or no skill and are predominantly games of chance, much like a *roulette* wheel") (emphasis added).

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

9

Case No. 11-CV-0629 WQH-POR

And, under California law and by virtue of her deriving benefits from what she now claims is an illegal contract, Plaintiff is presumed to have knowledge of its alleged illegality.  See Asher, 79 P.2d at 463-64 ("[O]ne who participates in the benefits derived from an illegal contract or enterprise is deemed to have knowledge thereof.").  Moreover, Plaintiff's claim for relief to restore her "lost money and property in the form of money" (Compl. ¶ 30) and for "restitution of all sums paid" (id.) cannot be proven without resort to evidence of the allegedly illegal games and the amount of money that she purportedly paid to play them on repeat occasions.  The Asher test is thus satisfied.

The Court's decision in Alves v. Player's Edge is instructive.  2007 WL 6004919, at *14.  The Court dismissed the plaintiffs' Section 17200 claims because the allegations in the complaint showed that plaintiffs "voluntarily engaged" in a "sports betting program."  Alves, 2007 WL 6004919, at *14.  In so doing, it relied on the California Court of Appeal's decision in Kelly v. First Astri Corporation, 72 Cal. App. 4th 462 (1999), in which the plaintiff asserted that he was injured by playing rigged blackjack games at an Indian casino.  Id. at 468.  Tracing California's public policy against adjudicating civil disputes arising out of gambling transactions back to the State's inception, the court in Kelly held that "neither courts of law nor courts of equity will aid or assist a plaintiff to recover money lost in a gambling game that is prohibited by law, regardless of where it is played and even if the loss resulted from cheating."  Id. at 477-79; see also id. at 489 ("California's public policy against judicial resolution of civil claims arising out of gambling contracts or transactions absent a statutory right to bring such claims, applies to all forms of gambling, whether legal or illegal.").  Because the California legislature "has not enacted a statute permitting the use of the process of the courts in California to resolve the kind of gambling loss claims asserted in [plaintiff's] complaint," public policy barred an action to recover gambling losses.  Id. at 489.  The rule applies equally to Plaintiff.

Having received benefits from the games and admitted repeat participation in them, Plaintiff is deemed to have known of their claimed illegality and, having sought restitution for money allegedly paid to play the games, Plaintiff cannot recover without reliance on the

allegedly illegal transaction.  See, e.g., Alves, 2007 WL 6004919, at *14.  Plaintiff is thus barred from seeking recovery of any money involved in what Plaintiff repeatedly labels "illegal gambling," and the Complaint must therefore be dismissed as a matter of law due to her lack of standing and under the doctrine of *in pari delicto*.  (See, e.g. Compl. ¶¶ 9, 10, 11, 13, 27.)[2]

**D.    Plaintiff's Declaratory Judgment Claim Must Be Dismissed As Duplicative.**

Plaintiff seeks a declaration that the kiddie arcade games operated by Chuck E. Cheese are illegal slot machines.  (See Compl. ¶¶ 39-41, Prayer ¶ E.)  The claim should be dismissed as duplicative of Plaintiff's Section 17200 claim in particular.

In the Ninth Circuit, declaratory relief "is only appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Ricon v. Recontrust Co., No. 09-CV-937, 2009 WL 2407396, at *6 (S.D. Cal. Aug. 4, 2009) (citing Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir. 1986)).  And federal courts in California do not hesitate to dismiss claims for declaratory relief where, as in this case, an adequate remedy exists under some other cause of action.  See Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009); see also Ricon, 2009 WL 2407396, at *6 (dismissing declaratory judgment claim as "needlessly duplicative").

Here, Plaintiff's declaratory judgment claim serves no "useful purpose" and is "needlessly duplicative."  Ricon, 2009 WL 2407396, at *6.  The question at issue with regard to Plaintiff's declaratory judgment claim—*e.g.*, the alleged illegality of the games referenced in the Complaint—overlaps entirely with the question at issue with regard to Plaintiff's Section 17200

---

[2] Other courts have refused to hear gambling disputes under the similar doctrine of *in pari delicto*.  See, e.g., Bradley v. Doherty, 30 Cal. App. 3d 991, 995 (1973) (granting demurrer and finding that "[t]he general rule is that courts will not recognize such an illegal contract (betting) and will not aid the parties thereto, but will leave them where it finds them") (citations omitted); Kelly, 72 Cal. App. 4th at 490-91.  Indeed, the doctrine has even been extended to a situation where a plaintiff was allegedly cheated out of a sum of money in the gambling transaction. Wallace, 73 Cal. App. 2d at 26-27 (holding that "[p]ublic policy prompts courts to decline to distinguish between degrees of turpitude of parties who engaged in outlawed transaction.").

claim, and the alleged illegality of the games referenced in the Complaint serves as the predicate for *all* of Plaintiff's claims.  (See, e.g., Compl. ¶ 28 ("Defendant has engaged in 'unlawful' business practices by violating California Penal Code §§ 330a and 330b"), ¶ 33 ("The contracts were illegal and unenforceable in that they violate California Penal Code §§ 330a and 330b"), ¶ 37 ("opportunity to play gambling devices").)

Moreover, any determination of the declaratory judgment claim will *not* terminate the controversy between Plaintiff and Chuck E. Cheese.  Id.  Rather, even if Plaintiff succeeds on her declaratory judgment claim, the Court will still have before it Plaintiff's claim for relief against Chuck E. Cheese for alleged violations of Section 17200, for breach of implied contract, and for rescission—pursuant to which Plaintiff seeks millions of dollars on behalf of a purported class. See Ricon, 2009 WL 2407396, at *6 (dismissing declaratory judgment claim because it would not resolve any issue not already addressed by the substantive Section 17200 claim); see also Concorde Equity II, LLC v. Miller, 732 F. Supp. 2d 990, 1002-03 (N. D. Cal. 2010) (dismissing declaratory judgment where relief sought was redundant and duplicative, and resolution of other causes of action would afford plaintiff same relief).

For these reasons, the Court should dismiss Plaintiff's declaratory judgment claim.

## E.    Plaintiff Cannot Maintain a Class Action Under Rule 23(b)(2) and the Relief Requested Should Be Stricken.

Unlike Rule 23(b)(2), Rule 23(b)(3) of the Federal Rules was designed for use in class actions where money damages are sought.  Amchem Prods., Inc. v. Windsor, 521 U.S 591, 614-15 (1997) ("Rule 23(b)(3) added to the complex litigation arsenal class actions for damages designed to secure judgments binding all class members save those affirmatively elected to be excluded").  The differing treatment stems from the fact that subsection (b)(2) requires the injunctive or declaratory relief sought to be in the nature of a uniform "group remedy" that may be awarded "without requiring specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case."  See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 414 (5th Cir. 1998).  Effectively conceding that she cannot meet

the "common issues predominate" requirement in Rule 23(b)(3), Plaintiff vaguely pleads her causes as class claims pursuant to "23(b)(2) *and/or* 23(b)(3)."  (Compl. ¶ 15 (emphasis added).) Plaintiff, however, inconsistently pleads an entitlement to significant money damages, which predominates over the injunctive relief she seeks.  As such, she cannot proceed under Rule 23(b)(2), and the Rule 23(b)(2) class allegations should be dismissed or, alternatively, stricken in their entirety.

The plain language of Rule 23(b)(2) contains no reference to monetary relief but refers instead to "final injunctive relief or corresponding declaratory relief."  However, the Advisory Committee Notes state that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  FED. R. CIV. P. 23(b)(2) advisory committee's note (1966).  Courts, including the Ninth Circuit, have inferred from this admonition authorization to certify a class under Rule 23(b)(2) in the limited circumstances where the monetary relief sought by an otherwise appropriate (b)(2) class is *not* "superior in strength, influence, or authority to the injunctive or corresponding declaratory relief sought by the plaintiff."  See Butler v. Sterling, Inc., 210 F.3d 371, at *6 (6th Cir. 2000) ("[A]ll of the other circuits that have considered the issue have held that certification of a [Rule] 23(b)(2) class turns on whether the injunctive and/or declaratory relief sought . . . 'predominate[s]' relative to any incidental monetary damages requested."); accord Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 616-17 (9th Cir.), ("Rule 23(b)(2) is not appropriate for all classes and 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."), cert. granted in part, 131 S. Ct. 795 (2010).

Consistent with the foregoing rule, Plaintiff cannot, on the one hand, claim classwide and uniform relief pursuant to Rule 23(b)(2) and, on the other hand, claim individual and class damages "in the form of money that was used to purchase Chuck E. Cheese tokens" to play the arcade games.  (Compl. ¶ 29; id. ¶ 34 (seeking "to obtain restitution of all sums paid"); id. Prayer at D ("Damages, restitution and/or disgorgement in an amount to be determined at trial but not less than $5 million.").)  The face of the Complaint makes clear that money damages

predominate over the injunctive relief sought by Plaintiff, and she, therefore, should be barred from proceeding under Rule 23(b)(2).  See, e.g., Hovespian v. Apple, Inc., No. 08-5788, 2009 WL 5069144, at *2, *6 (N.D. Cal. Dec. 17, 2009) (holding that "Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained" and granting Rule 12(f) motion to strike 23(b)(2) class allegations because primary relief sought was monetary).

When faced with a similar fact circumstance where an insured sought to proceed under Rule 23(b)(2) on his Section 17200 claims for restitution and past injuries, this Court barred the plaintiff.  See Campion v. Old Republic Home Protection Co., Inc., --- F.R.D. ---, 2011 WL 42759, at *19 (S.D. Cal. Jan. 6, 2011) ("although he [the plaintiff] seeks injunctive and declaratory relief, the nature of the relief sought is equivalent to a declaration of liability," and Plaintiff's claims are predicated on monetary restitution for putative class members"); accord Waters v. Advent Prod. Dev., Inc., No. 07-CV-2089, 2011 WL 721661, at *4 (S.D. Cal. Feb. 22, 2011) (refusing to permit the plaintiff to proceed under Rule 23(b)(2) because "the putative class will not derive much benefit from an injunction restraining Defendants from violating the applicable laws . . . .  The real benefit to the class members lies in the monetary relief . . . includ[ing] restitution of the fees paid."); Arabian v. Sony Elecs., Inc., No. 05-CV-1741, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) (Hayes, J.) (plaintiffs cannot proceed on their Section 17200 claims under Rule 23(b)(2) where monetary relief was not secondary to the injunctive relief); cf. Funliner of Alabama, L.L.C. v. Pickard, 873 So. 2d 198, 209 (Ala. 2003) (class of video arcade players claiming restitution of money lost playing video games could not proceed under analogous Alabama Rule of Civil Procedure 23(b)(2) because money damages necessarily predominates).  The Court should similarly bar Plaintiff in this case.

Because it is patently clear from the Complaint that Plaintiff cannot proceed under Rule 23(b)(2), the Court should dismiss or, alternatively, strike these allegations.

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

14

Case No. 11-CV-0629 WQH-POR

**F.     Plaintiff's Claim for Attorneys' Fees Should Be Dismissed or the Relief Stricken.**

Attorneys' fees are not recoverable under Section 17200, and Plaintiff has not pleaded an independent right to them under section 1021.5 of the California Code of Civil Procedure ("Section 1021.5").  See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 179 (1999) (under Section 17200, "[p]laintiffs may not receive damages, . . . or attorney's fees."); see also Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1288 (2002) ("[Section 17200] does not provide for the recovery of damages or attorney's fees."); Am. Online, Inc. v. Superior Court, 90 Cal. App. 4th 1, 11 (2001) (under Section 17200, "neither actual damages nor attorney fees are recoverable"); Woo v. Home Loan Group, L.P., No. 07-CV-0202, 2007 WL 6624925, at *3 (S.D. Cal. July 27, 2007) ("Prevailing parties under section 17200 may not receive damages or attorneys' fees.").  On that basis alone, the relief requested should be stricken.  (See Compl. ¶ 30.)

Even if Plaintiff had pled an entitlement to attorneys' fees under Section 1021.5 (which she has not), such relief is unavailable here.  Some courts have permitted the recovery of (or simply assumed without discussion the availability of) attorneys' fees pursuant to Section 1021.5 when a plaintiff brings a Section 17200 claim, but they have done so *only* if certain public interest standards not relevant in this case are satisfied.  See Notrica v. State Comp. Ins. Fund, 70 Cal. App. 4th 911, 954-55 (1999) (permitting recovery of attorneys' fees as a "private attorney general" under Section 1021.5 if injunctive relief confers a significant benefit on the public); Woodland Hills Residents Ass'n, Inc. v. City Council, 23 Cal. 3d 917, 939 (1979) (the "significant benefit" required for the recovery of attorneys" fees under the "private attorney general" statute is generally the "vindication of a fundamental constitutional right or statutory policy"); see also Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab., No. 10-0443, 2010 WL 2077143, at *7-8 (N.D. Cal. May 21, 2010) (granting motion to strike allegations under Section 1021.5).

Plaintiff seeks purely private relief in the form of money damages, and she does so while simultaneously admitting that she participated in the transaction that she now claims is

US_ACTIVE:\43700042\04\34282.0003
CEC ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

15

Case No. 11-CV-0629 WQH-POR

illegal.  She does not cite to any "fundamental constitutional right" that is being vindicated by her lawsuit, and, as discussed above, the Penal Code on which her lawsuit is predicated, if applicable, applies to her as well.  Accordingly, she does not (and cannot) seek to vindicate a fundamental constitutional right or statutory policy.

Plaintiff's request for recovery of attorneys' fees, therefore, should be dismissed or, alternatively, stricken from the Complaint.

## IV.    CONCLUSION AND REQUESTED RELIEF

Based on the foregoing, Chuck E. Cheese respectfully requests that this Court grant its Motion and dismiss all of Plaintiff's claims or, alternatively, strike the attorneys' fees and Rule 23(b)(2) allegations.  Chuck E. Cheese requests all such other relief to which it may be justly entitled.

DATED:        May 6, 2011

WEIL, GOTSHAL & MANGES, LLP

_____/s/ Christopher J. Cox_____
Christopher J. Cox
Attorney for Defendant
CEC ENTERTAINMENT, INC.
E-mail: chris.cox@weil.com

OF COUNSEL:

Yvette Ostolaza
Michelle Hartmann
Casey A. Burton
WEIL, GOTSHAL & MANGES, LLP
200 Crescent Court, Suite 300
Dallas, TX 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

# TABLE OF EXHIBITS

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| A | Cal. Bill Analysis, Cal. Senate Comm. on Public Safety, A.B. 1753 Sen. (June 22, 2010) | 1-4 |